**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **KACEY LEWIS,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO.** |
| | : | |
| **v.** | : | **3:10-cv-00112-VLB** |
| | : | |
| **THOMAS CAVANAUGH; JAMES DICKEY;** | : | **FEBRUARY 10, 2015** |
| **and ROBERT LIQUINDOLI,** | : | |
| **Defendants.** | : | |

**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Before the court is defendants Thomas Cavanaugh, James Dickey, and Robert Liquindoli's motion for partial summary judgment on plaintiff Kacey Lewis's complaint. As set forth in the Initial Review Order entered on January 24, 2011, there are three claims pending in this case: (1) plaintiff's claim for deliberate indifference to a serious medical need in violation of the Fourteenth Amendment as to all three defendants; (2) plaintiff's claim of excessive use of force in violation of the Fourth Amendment as to defendants Cavanaugh and Liquindoli; and (3) plaintiff's claim for unconstitutional interrogation in violation of the Fourteenth Amendment against defendant Dickey. For the following reasons, the motion for partial summary judgment is granted as to plaintiff's claim of deliberate indifference and denied as to plaintiff's excessive force claim. Because defendants did not move for summary judgment on plaintiff's claim of unconstitutional interrogation, that claim and plaintiff's excessive force claim are ripe for trial.

1

## I. FACTS

Before discussing the relevant facts, the court first notes that plaintiff, who is represented by counsel in this action and in responding to the pending motion for summary judgment, has failed to comply with District of Connecticut Local Rule 56(a)(2), which provides that "[t]he papers opposing a motion for summary judgment shall include a document entitled 'Local Rule 56(a)(2) Statement' which states in separately numbered paragraphs meeting the requirements of Local Rule 56(a)3 and corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied."  D. Conn. Local R. Civ. P. 56(a)(2).  Pursuant to Local Rule 56(a)(1), because plaintiff failed to submit a Local Rule 56(a)(2) statement, all properly supported facts in defendants' Rule 56(a)(1) statement will be deemed admitted.  D. Conn. Local R. Civ. P. 56(a)(1) ("All material facts set forth in [defendants' 56(a)(1) statement] and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2"); *see also Young v. Choinski*, 15 F. Supp. 3d 172, 178 (D. Conn. 2014) (noting that where "plaintiff failed to file any objection or response to the summary judgment motion," "defendants' properly supported facts are deemed admitted." (citing D. Conn. Local R. Civ. P. 56(a)(1)).

Although plaintiff did not submit a Rule 56(a) statement as required by the local rules, he did submit a statement titled "affidavit" presenting his version of

events.[1]  However, this statement was neither sworn nor affirms that it was

signed under penalty of perjury, as required by 28 U.S.C. § 1746, and therefore

the court will refer to the document as "plaintiff's Statement" herein, will cite to it

as "Pl. Statement", and will not consider it as evidence in deciding this summary

judgment motion.  Section 1746 provides that where:

> any matter is required or permitted to be supported, evidenced,
> established, or proved by the sworn declaration, verification, certificate,
> statement, oath, or affidavit, in writing of the person making the same . . .
> such matter may, with like force and effect, be supported, evidenced,
> established, or proved by the unsworn declaration, certificate, verification,
> or statement, in writing of such person which is subscribed by him, as true
> under penalty of perjury, and dated, in substantially the following form:
>
> . . .
>
> If executed within the United States, its territories, possessions, or
> commonwealths:
>
> "I declare (or certify, verify, or state) under penalty of perjury that the
> foregoing is true and correct. Executed on (date).
>
> (Signature)".

28 U.S.C. § 1746.

Plaintiff's Statement says only "I hereby depose and say that the

statements made in this affidavit are made in good faith and are pertinent with

respect to the claims made by the Defendants in their Motion for Summary

Judgment and the claims asserted in my Amended Complaint."  Pl. Statement p.

1.  Nowhere does plaintiff's Statement state that it was made under penalty of

perjury, nor is the assertion that plaintiff's Statement was made "in good faith" in

any way equivalent to the talismanic words "under penalty of perjury," and thus

---

[1] References to plaintiff's "affidavit" cite to the amended affidavit filed by plaintiff
December 18, 2014, ECF No. 77.

3

the court will not consider it as evidence in this proceeding.  *See, e.g., Monahan v. NRA Group L.L.C.*, No. 3:10cv00638, 2011 U.S. Dist. LEXIS 99753, at *8 n. 5 (D. Conn. Sept. 6, 2011) (finding that plaintiff's "affidavit," which was not dated, notarized, or signed under penalty of perjury does not meet the requirements of a sworn affidavit or an unsworn declaration and declining to consider it); *Pascale v. Lepore*, No. 3:09cv08, 2010 U.S. Dist. LEXIS 83310, at *14 (D. Conn. Aug. 16, 2010) (noting that witness statements that are neither sworn nor made under penalty of perjury do not constitute affidavits or declarations made pursuant to 28 U.S.C. § 1746).  Because plaintiff's Statement was not signed under penalty of perjury, it does not meet the requirements of Local Rule 56(a)(3), which requires facts presented in Rule 56(a)(1) and Rule 56(a)(2) statements to be supported by specific citation to either (1) the affidavit of a witness competent to testify at trial, and/r (2) evidence that would be admissible at trial.  Thus plaintiff's Statement, albeit entitled "affidavit", does not establish facts necessary to raise a genuine issue of material fact.  Although the court will rely only on defendants' properly supported facts in deciding the motion for summary judgment, the court will discuss below the relevant facts asserted by plaintiff in his opposition to the defendants' motion for summary judgment.

At approximately 12:30 AM on July 21, 2009, defendants Cavanaugh and Liquindoli, who are detectives on the Waterbury Police Department, were patrolling by vehicle the area of Hillside Avenue and Willow Street in Waterbury, Connecticut.  Defs. 56(a)(1) Statement ¶ 2.  While at the intersection of Hillside Avenue and Willow Street, Detectives Cavanaugh and Liquindoli observed

4

plaintiff striking a woman and dragging that woman by her hair towards a vehicle. Defs. 56(a)(1) Statement ¶ 5.  The woman broke free from plaintiff, after which plaintiff got into the driver's seat of his vehicle.  Defs. 56(a)(1) Statement ¶¶ 6-7. Detective Cavanaugh then exited his vehicle and approached plaintiff's vehicle. Defs. 56(a)(1) Statement ¶ 8.

Defendants assert that they identified themselves as police officers, both by displaying badges on chains around their necks, and verbally.  Defs. 56(a)(1) Statement ¶¶ 9-10, 12.  Plaintiff argues that the detectives were in plainclothes, and that they did not display any badges or identify themselves verbally until after plaintiff had been handcuffed.  Pl. Statement ¶ 19.

Defendants state that Cavanaugh instructed plaintiff to put his vehicle in park and exit the vehicle, but plaintiff ignored those instructions and continued to attempt to drive his vehicle.  Defs. 56(a)(1) Statement ¶ 2.  According to defendants, Liquindoli exited defendants' vehicle and moved to join Cavanaugh at plaintiff's driver's side door when Liquindoli observed plaintiff's failure to comply with Cavanaugh's instructions.  Defs. 56(a)(1) Statement ¶ 11.  According to defendants, plaintiff yelled "F--- you, I'm not stopping.  I'm getting out of here." Defs. 56(a)(1) Statement ¶ 13.

In plaintiff's version of events, an unknown white male appeared at his driver's side window and motioned for him to roll down his window.  Pl. Statement ¶ 15.  Plaintiff did not comply because he did know the white male, and continued to attempt to start his vehicle.  Pl. Statement ¶ 15.

According to defendants, Cavanaugh then smashed plaintiff's driver's side window with his flashlight.  Pl. Statement ¶ 15; Defs. 56(a)(1) Statement ¶ 13. Defendants state that after Cavanaugh broke the window, he leaned into the driver's seat to attempt to shut off plaintiff's vehicle and prevent the vehicle from leaving.  Defs. 56(a)(1) Statement ¶ 14.  Plaintiff pushed Cavanaugh away, striking him several times.  Defs. 56(a)(1) Statement ¶ 14.  At the same time, Liquindoli was attempting to restrain plaintiff, but could not do so because plaintiff was flailing his arms and swinging them at the police officers.  Defs. 56(a)(1) Statement ¶ 14.  Plaintiff then exited his vehicle out the passenger side of the vehicle.  Defs. 56(a)(1) Statement ¶ 15.  Liquindoli ran to the passenger side of the vehicle, and attempted to grab plaintiff's arms as he was exiting the vehicle. Defs. 56(a)(1) Statement ¶¶ 15-16.  Lewis then punched the left side of Liquindoli's face with a closed fist.  Defs. 56(a)(1) Statement ¶ 16.  Liquindoli testified at trial that: "I went back, I was -- it was a pretty good shot, he got me good.  I felt a lot of pain, kind of like the cartoons, see little stars."  Defs. 56(a)(1) Statement ¶ 16, Ex. I, Dec. 8, 2009 Trial Tr. at 94:6-9.  At the same time, Cavanaugh was running over to the passenger side of plaintiff's vehicle.  Defs. 56(a)(1) Statement ¶ 17.  Liquindoli then struck plaintiff in the face, and Cavanaugh grabbed plaintiff from behind and all three people fell to the ground. Defs. 56(a)(1) Statement ¶ 17.  It is unclear from defendants' version of events whether Cavanaugh was holding plaintiff at the time Liquindoli punched him, or what caused all three people to fall to the ground together.  Cavanaugh held plaintiff's legs as the three fell to the ground, and plaintiff landed on his back,

with Cavanaugh still holding his legs and Liquindoli "located at the top half of Mr. Lewis' body."  Defs. 56(a)(1) Statement ¶ 18.  While lying on the ground, plaintiff resisted arrest by flailing his arms, kicking his legs, and trying to get away from the officers.  Defs. 56(a)(1) Statement ¶ 18.  The officers told plaintiff that he was under arrest and to stop resisting, and plaintiff responded with profanities and by telling the officers that he was not going to jail and to get off of him.  Defs. 56(a)(1) Statement ¶ 18.  Plaintiff kicked Cavanaugh repeatedly while the three were lying on the ground and Cavanaugh was attempting to hold plaintiff's legs.  Defs. 56(a)(1) Statement ¶ 19.  One of the kicks hit Cavanaugh in the ribs hard enough to knock the wind out of him and give him trouble breathing.  Defs. 56(a)(1) Statement ¶ 19.  At some point, plaintiff told the officers that he would no longer resist them.  Defs. 56(a)(1) Statement ¶ 20.  The officers then "loosened up a little off [plaintiff's] body," at which time plaintiff made an effort to get away.  Defs. 56(a)(1) Statement ¶ 20.  The officers regained control of plaintiff by keeping their body weight on him, with Liquindoli on the upper half of plaintiff's body and Cavanaugh on the lower half, and then handcuffed him.  Defs. 56(a)(1) Statement ¶¶ 20-21.  Backup patrol units then arrived on the scene and plaintiff was transported to the Waterbury Police Department for processing and booking.  Defs. 56(a)(1) Statement ¶¶ 21, 24.  It appears from the record before the court that plaintiff was transported to the Waterbury Police Department by officers other than Cavanaugh or Liquindoli.  See Defs. 56(a)(1) Statement ¶¶ 21, 24.[2]

---

[2] Although neither party's briefing states this fact explicitly, defendant's 56(a)(1) Statement provides that "[b]ackup patrol units arrived on the scene and placed Mr. Lewis in the rear seat of a police car" and that plaintiff "was transported by

There is no indication in either the defendants' 56(a)(1) Statement or plaintiff's Statement that defendants Cavanaugh or Liquindoli had any contact with plaintiff after plaintiff was taken from the scene of the arrest.   A patrol unit took Cavanaugh to St. Mary's Hospital in Waterbury for examination of wounds to his hands and his ribs.   Defs. 56(a)(1) Statement ¶ 23.   There is no evidence in the record that Liquindoli received any medical treatment following the arrest.

In plaintiff's version of events, after breaking the driver's side window, one of the officers reached into plaintiff's car and opened the driver's side door.   Pl. Statement ¶ 16.   Another officer then pulled plaintiff out of the car and threw him to the ground causing plaintiff to hit his head on the ground.   Pl. Statement ¶ 16. The officer that pulled plaintiff out of the car then stood on plaintiff's back while the other officer punched plaintiff repeatedly in the head, face, and eye, and repeatedly "banged" plaintiff's head into the into the ground.   Pl. Statement ¶ 17. Plaintiff asserts that the officers never identified themselves during the incident and that he only learned "later" that it was Liquindoli who pulled him from the car and stood on his back and Cavanaugh who smashed the window and then beat plaintiff in the head as he lay on the ground outside the vehicle.   Pl. Statement ¶ 20.

Starting at approximately 2:45 AM, Plaintiff was interviewed by defendant Dickey in a police department interview room for about forty (40) minutes.   Defs.

---

Waterbury Police Department Truck 75 away from the scene of the arrest."   Defs. 56(a)(1) Statement ¶¶ 21, 24.   Those statements, combined with the fact that Cavanaugh was transported from the scene of the arrest to St. Mary's Hospital, Defs.   56(a)(1) Statement ¶¶ 22, give the appearance that plaintiff was transported to the police department by officers other than Cavanaugh and Liquindoli.

56(a)(1) Statement ¶ 25-26.  After the interview, Dickey escorted plaintiff to the booking division of the Waterbury Police Department.  Defs. 56(a)(1) Statement ¶ 27.  While he was completing the booking procedures, plaintiff signed a document titled "Waterbury Police Department Waiver of Medical Treatment and/or Medical Examination," a copy of which is attached as Exhibit C to defendants' Rule 56(a)(1) statement. Defs. 56(a)(1) Statement ¶ 29, Ex. C.  The waiver states "At this time and date, I refuse and waive my right to medical treatment and/or examination."  Defs. 56(a)(1) Statement, Ex. C.  The waiver form was signed by plaintiff at 4:33 AM on July 21, 2009.  Defs. 56(a)(1) Statement, Ex. C.  The waiver form describes the nature of plaintiff's injury as "SCRAPES TO LEFT EYE & CHEEK."  Defs. 56(a)(1) Statement ¶ 31, Ex. C.

Again, plaintiff tells a different version of the relevant events that occurred at the police department following plaintiff's arrest.  Plaintiff asserts that after arriving at the police department he began asking the police to take him to the hospital, telling them that he had been hit in the head multiple times, and that he was dizzy, nauseous, his head was swollen, and he was seeing double. Pl. Statement ¶ 22.  Rather than take him to the hospital, the police told plaintiff he should be glad he was not dead, and that he had no business messing with white women and trying to run from the police.  Pl. Statement ¶ 23.  Plaintiff also notes that he had defecated and urinated on himself during the earlier incidents, and that he asked the police for sanitary paper and soap because he had excrement and urine all over his clothes and body.  Pl. Statement ¶ 24.  Plaintiff does not state that he was denied sanitary paper or soap.  Plaintiff also asserts that he told

defendant Dickey that he wanted to be taken to the hospital and that his head was swollen, he was dizzy and nauseated, that the police had banged his head into the ground during his arrest, and that he had already asked to be taken to the hospital.  Pl. Statement ¶ 26.  Dickey ignored plaintiff's request to be taken to the hospital.  Pl. Statement ¶ 27.  Plaintiff did not receive medical attention until he arrived at the Waterbury Superior Court, at which time the Judicial Marshals at Waterbury Superior Court asked plaintiff if he needed medical attention.  Pl. Statement ¶ 31.  When plaintiff answered "yes" the Judicial Marshals refused to accept plaintiff in the court, and he was returned to the police department transport van and taken back to the Waterbury Police Department.  Pl. Statement ¶ 31.  Several hours later plaintiff was transported by the police department to St. Mary's Hospital.  Pl. Statement ¶ 22.  Plaintiff was admitted to the emergency room at St. Mary's Hospital at 12:04 PM on July 21, 2009.  Pl. Statement ¶ 35; Defs. 56(a)(1) Statement ¶ 32, Ex. A.  Plaintiff argues that he signed the waiver for medical treatment at booking "because I was threatened with further injury, and not because I did not want or need medical treatment."  Pl. Statement ¶ 40.

## II. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be

drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315-16 (2d Cir. 2006) (internal quotation marks and citation omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.  At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.,* No. 3:03cv00481, 2004 U.S. Dist. LEXIS 22112, at *4 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011).  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712, 726-27 (2d Cir. 2010).

## III. ANALYSIS

## A.  Deliberate Indifference to a Serious Medical Need

Defendants argue that summary judgment should be granted in their favor on plaintiff's deliberate indifference claim because "plaintiff did not present with a serious medical need" to any of the named defendants during their interactions with plaintiff.  Def. Mem. at 7.  Plaintiff does not respond to this argument in his memorandum of law.  Plaintiff's only opposition to this argument is in plaintiff's Statement, in which he asserts: "Although the Defendants have indicated that my only treatment for the injuries I suffered was a single trip to the emergency room at St. Mary's Hospital, I received subsequent treatment for my injuries through the Department of Corrections after I was transported from Court to the Correctional System."  Pl. Statement ¶ 39.  Plaintiff has not submitted treatment records from the Department of Corrections (the "DOC"), although plaintiff did attach to his Statement records from a visit to the University of Connecticut medical center apparently made after he was transferred to the custody of the DOC.

## 1. Legal Standard For Deliberate Indifference Claim

Because plaintiff's claims of deliberate indifference arose while he was in pre-trial detention, his claims are properly brought under the Fourteenth Amendment  due process clause rather than the Eighth Amendment prohibition on cruel and unusual punishment.  *See, e.g., Pagan v. Quiros*, No. 3:11cv1134, 2014 U.S. Dist. LEXIS 34906, at *10 (D. Conn. Mar. 18, 2014) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)).  However, in the Second Circuit "[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same

standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009).

"There are two elements to a claim of deliberate indifference to a serious medical condition: '[The plaintiff] must show that she [or he] had a serious medical condition and that it was met with 'deliberate indifference.'" *Caiozzo*, 581 F.3d at 72 (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000)).

The question of whether plaintiff had a serious medical condition requires consideration of whether the deprivation of medical care was "objectively sufficiently serious, such as a condition that may produce 'death, degeneration, or extreme pain.'" *Jamison v. Metz*, 541 F. App'x 15, 21 (2d Cir. 2013) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).  An injury that a reasonable doctor would find important, a medical condition that significantly affects daily activities or causes chronic and substantial pain or a situation where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap is considered serious.  *See Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

The second prong of a deliberate indifference claim is a subjective standard and requires plaintiff to show that defendants had "a state of mind that is the equivalent of criminal recklessness; namely, when the prison official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hathaway*, 99 F.3d at 553 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The required state of mind is "equivalent to criminal recklessness." *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998). The defendant must "'know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hemmings*, 134 F.3d at 108 (quoting *Hathaway*, 99 F.3d at 553).

## 2. Plaintiff's Injuries Were Not Sufficiently Serious

The court agrees that summary judgment must be granted in defendants' favor on this claim because it is undisputed that plaintiff's medical records reveal that did not suffer a serious medical need.  Because the first prong of a deliberate indifference claim is an objective standard that requires the court to consider whether plaintiff in fact suffered from a serious medical condition, the court may rely on plaintiff's medical records to grant summary judgment. *See, e.g., Colon v. Porliar*, No. 09cv1006, 2012 U.S. Dist. LEXIS 2924, at *30-31  (N.D.N.Y. Jan. 10, 2012) (finding plaintiff does not satisfy objective prong where x-rays taken the day after plaintiff's ribs were allegedly broken reveal no fractures, and where plaintiff has not otherwise introduced evidence that his injuries were serious); *cf. Guarneri v. Hazzard*, No. 9:06cv985, 2010 U.S. Dist. LEXIS 26966, at *26-27 (N.D.N.Y. Mar. 22 2010) ("Defendants can meet their burden of establishing their entitlement to motion for summary judgment by relying on plaintiff's medical records to establish the absence of any evidence supporting deliberate indifference to his mental health needs." (quoting *Mills v. Luplow*, No. 04cv05, 2009 U.S. Dist. LEXIS 81459, at *20-21 (W.D.N.Y. Mar. 30, 2009)); *Rodriguez v. City*

*of New York*, 802 F. Supp. 2d 477, 482 (S.D.N.Y. 2011) ("neither [plaintiff's] own description nor that in the medical record suggests that [plaintiff's] physical condition after the alleged incident required urgent care."); *Dickson v. Colman*, 569 F.2d 1310, 1311-12 (5th Cir. 1978) (finding that plaintiff who complained of dizziness and headaches failed to satisfy both the objective and subjective prongs of a deliberate indifference claim and noting that "[t]he seriousness of the medical needs was contradicted by the affidavit of the examining physician").

Plaintiff was admitted to Saint Mary's Hospital in Waterbury at 12:59 PM on July 21, 2009, according to the records from that visit.  Def. 56(a)(1) Statement, Ex. A.  Plaintiff was diagnosed with a closed head injury and facial contusions and abrasions.  Def. 56(a)(1) Statement, Ex. A at 4.  The records state that plaintiff had several abrasions, ranging in size from 2 millimeters to 8 millimeters, and that the deepest tissue involved was the deep dermis.  Def. 56(a)(1) Statement, Ex. A at 6.  Plaintiff was given two CT scans, one apparently focused on his eye sockets, and a general head CT scan.  Neither showed any injury to plaintiff.  Def. 56(a)(1) Statement, Ex. A at 13-14.  Plaintiff was treated in the hospital with Rocephin, an antibiotic, and Zithromax, also an antibiotic.  Plaintiff was also apparently given prescriptions for Motrin, which is a trade name for ibuprofen, and Bactrim DS, which is an antibiotic.  Def. 56(a)(1) Statement, Ex. A at 8, 15. The medical records show that plaintiff was also complaining of a pre-existing condition and it is unclear from the record whether the antibiotics administered and prescribed to plaintiff were aimed at treating that pre-existing condition, the injuries received in the assault, or both.

15

Because the records of plaintiff's examination at St. Mary's Hospital following his arrest reveal that plaintiff suffered only bruising and abrasions to the skin on his face, plaintiff cannot show that he had a serious medical need and therefore cannot satisfy the objective prong of his deliberate indifference claim. *See, e.g.*, *Sloane v. Borawski*, 12cv25, 2014 U.S. Dist. LEXIS 168175, at *42-43 (W.D.N.Y. Dec. 4, 2014) (finding that plaintiff's injuries, including a two-and-a-half inch laceration to the top of his head, a one-half inch laceration to his left eyebrow, and a small abrasion on his chin, do not satisfy the objective component of a deliberate indifference claim); *Garcia v. Furnia*, No. 9:12cv0924, 2014 U.S. Dist. LEXIS 132779, at *9-12 (N.D.N.Y. Aug. 1, 2014) (finding that plaintiff who suffered from "(1) body soreness; (2) a black eye; (3) scrapes and minor contusions; (4) a headache; (5) a loose tooth; (6) a 'wobbly' knee; and (7) blurriness in one eye" could not satisfy objective element of a deliberate indifference claim) *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 352, 354 (N.D.N.Y. 2010) (noting that "[g]enerally, courts in this Circuit have not viewed bruises and other superficial injuries as 'serious injuries'" and finding that "two three-inch reddened areas on his shoulders with broken skin and a half-inch superficial abrasion on his Achilles tendon" are insufficient to satisfy the objective element of a deliberate indifference claim (citations omitted)).

Plaintiff argues that the court should consider the further treatment he received while in the care of the DOC, and has submitted medical records from an examination conducted at the University of Connecticut Health Center at 8:50 PM on July 21, 2009.  Pl. Statement ¶ 39, Ex. 15.  However, the records from this visit

do not support plaintiff's claim, as they do not reveal any additional injuries beyond those diagnosed at St. Mary's Hospital, nor do they show those injuries to be any more severe than first diagnosed.

### 3. Deliberate Indifference as to Cavanaugh and Liquindoli

Even crediting the assertions made in plaintiff's Statement, plaintiff does not create a genuine question of material fact as to whether defendants Cavanaugh and Liquindoli were aware of any medical need, serious or otherwise. Further, nowhere in the record before the court is there any evidence that Cavanaugh and Liquindoli had any interactions with plaintiff after additional officers arrived at the scene of the incident.   Plaintiff himself states that he only complained of his injuries and asked for medical care after arriving at the Waterbury Police Department.  Pl. Statement ¶ 22.  Plaintiff does not assert that either Cavanaugh or Liquindoli was present at any time while plaintiff was at the Waterbury Police Department, and thus he does not show that they ever heard plaintiff complain of his injuries.  As a result Plaintiff cannot satisfy the subjective standard of a deliberate indifference claim, as plaintiff cannot show that Liquindoli and Cavanaugh knew of and showed disregard for any injury.  The court grants defendants' motion for summary judgment on plaintiff's claim of deliberate indifference as to defendants Liquindoli and Cavanaugh.

### 4. Deliberate Indifference as to Dickey

Plaintiff states in his Statement that he told Dickey: "my head was swollen, I was dizzy and nauseated and that the police that arrested me had banged my head into the ground," Pl. Statement ¶ 26, and defendant Dickey does not dispute

this assertion.  Although it is possible that plaintiff could satisfy the subjective

prong as to defendant Dickey had he submitted a sufficient Rule 56(a)(2)

statement or an affidavit,[3] the court need not reach that question here, because,

as discussed above in Part III.A.2, plaintiff cannot satisfy the objective prong of

his claim.  The court grants summary judgment on this claim in favor of

defendant Dickey.

## B.  Excessive Force During Plaintiff's Arrest

Defendants argue that their use of force was reasonable in the

circumstances here because they observed plaintiff commit a violent felony, and

that plaintiff posed an immediate threat to the officers and others, and that he

was resisting arrest an attempting to flee.  The officers assert that they only used

force in response to plaintiff's physical and verbal resistance to arrest.  Defs.

Mem. at 28.  They argue that plaintiff was "abusive, belligerent, aggressive,

physically assaultive and non-compliant to Defendants' instructions and

directives," and that they applied "the minimum amount of force necessary to

subdue" plaintiff.  Defs. Mem. at 29.  Finally, defendants also argue that even if

they used excessive force, they are entitled to qualified immunity.  Plaintiff's two

page memorandum of law contains no response to defendants' arguments.

## 1. Legal Standard for Excessive Force Claim

"Police officers' application of force is excessive, in violation of the Fourth

Amendment, if it is objectively unreasonable 'in light of the facts and

---

[3] Although defendants cite to the medical treatment waiver signed by plaintiff to
support their summary judgment motion, the court is unwilling to give much if
any weight to that document, as it was executed after plaintiff's interactions with
the named defendants.

circumstances confronting them, without regard to their underlying intent or

motivation.'"  *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004)

(quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  "This evaluation entails a

consideration of 'the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight.'"  *Marchand v. Simonson*,

16 F. Supp. 3d 97, 119 (D. Conn. 2014) (quoting *Graham*, 490 U.S. at 396).  "A

claim that excessive force was used in the course of a seizure is subject to an

objective test of reasonableness under the totality of the circumstances, which

requires consideration of the specific facts in each case, including the severity of

the crime at issue, whether the suspect posed an immediate threat to the safety

of others and whether he is actively resisting arrest."  *Sullivan v. Gagnier*, 225

F.3d 161, 165 (2d Cir. 2000) (citing *Graham*, 490 U.S. at 395-96).

> The "reasonableness" of a particular use of force must be judged from the
> perspective of a reasonable officer on the scene, rather than with the 20/20
> vision of hindsight. . . . The calculus of reasonableness must embody
> allowance for the fact that police officers are often forced to make split-
> second judgments -- in circumstances that are tense, uncertain, and rapidly
> evolving -- about the amount of force that is necessary in a particular
> situation.

*Graham*, 490 U.S. at 396-97 (citations omitted).

"The fact that a person whom a police officer attempts to arrest resists,

threatens, or assaults the officer no doubt justifies the officer's use of *some*

degree of force, but it does not give the officer license to use force without limit.

The force used by the officer must be reasonably related to the nature of the

resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan*, 225 F.3d at 165-66.

"'Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officer's conduct was objectively unreasonable.'" *Crawford v. City of New London*, No. 3:11cv1371, 2014 U.S. Dist. LEXIS 5578, *15 (D. Conn. Jan. 16, 2014) (quoting *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

## 2. Summary Judgment Must Be Denied

Even accepting the supported facts in the defendants' Rule 56(a)(1) statement as admitted, the court will not grant summary judgment on this claim, as defendants have not shown that no reasonable factfinder could conclude that the defendants' conduct was objectively unreasonable. Among other things, the jury will have to decide whether it was reasonable for Cavanaugh to smash plaintiff's window with his flashlight, inches from plaintiff's head, particularly in light of the fact that plaintiff had retreated and did not pose a risk of imminent harm to anyone at that time. The jury will also have to decide whether it was reasonable for Liquindoli to punch plaintiff in the face in response to plaintiff's own blow. Further, the defendants' 56(a)(1) statement does not state how plaintiff received his facial injuries. Although the fact that plaintiff was resisting arrest is deemed admitted, the fact of resisting arrest does not excuse the use of excessive force. For example, a defendant who is convicted of resisting arrest is not foreclosed from bringing a claim for excessive force. *See, e.g., Sullivan*, 225

F.3d at 165 (citations omitted) (noting that a "jury's return of a guilty verdict in state court for resisting arrest and/or other offenses such as assault on a police officer does not necessarily preclude a subsequent claim of excessive force in federal court."). Similarly, even if the officers here witnessed plaintiff commit a violent felony, and even if plaintiff resisted arrest, defendants have not shown that a reasonable jury could not find that the officers' use of force was objectively unreasonable under the circumstances. This court will leave it to the jury to determine whether the officers' use of force was objectively unreasonable in the circumstances.

### 3. Collateral Estoppel

Plaintiff's Statement asserts that he was acquitted of assault on a police officer, and also asserts that photos of Liquindoli's face do not show injuries consistent with Liquindoli's version of the events that evening. The exhibits attached to plaintiff's Statement show that plaintiff was charged with, and acquitted of, two counts of assault on public safety personnel, in violation of Connecticut General Statute, section 53a-167c(a)(1). Pl. Statement, Ex. 14 at p. 12. Plaintiff appears to be arguing that Cavanaugh and Liquindoli should be collaterally estopped from arguing that their use of force as appropriate given that they were assaulted by plaintiff. The court need not consider this argument because the court is denying defendants' motion for summary judgment on this claim. However, even if the court were not denying the motion for summary judgment on plaintiff's excessive force claim, plaintiff has not adequately raised a

claim for collateral estoppel.  Collateral estoppel must be raised by the party seeking preclusion.  *See Sullivan*, 225 F. 3d at 166 (citation omitted).

Pursuant to the doctrine of collateral estoppel, "an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit."  *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 718 (2d Cir. 1993) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)).  "Collateral estoppel 'applies when: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issues previously litigated were necessary to support a valid and final judgment on the merits.'"  *Byars v. Malloy*, No. 3:11cv17, 2011 U.S. Dist. LEXIS 111483, at *7 (D. Conn. Sept. 29, 2011) (quoting *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008)).

This court cannot conduct a collateral estoppel inquiry here because the record before the court does not contain enough information about plaintiff's state court criminal proceeding.  "The doctrine of collateral estoppel requires a detailed examination of the record in the prior state criminal case, including the pleadings, the evidence submitted and the jury instructions, in order to determine what issues were actually litigated and necessary to support a final judgment on the merits."  *Sullivan*, 225 F.3d at 166.  The parties here have provided this court with only small excerpts of the trial testimony in the prior proceeding, and have not provided the relevant indictment from the prior proceeding, any pleadings filed in that case, the evidence submitted, the jury instructions, or a complete

transcript of the trial.  Plaintiff has thus failed to adequately raise the issue of collateral estoppel.

Further, even if plaintiff had provided the necessary support for his collateral estoppel claim, and the court was not otherwise going to deny defendant's motion for summary judgment on plaintiff's excessive force claim, the request for collateral estoppel would have to be denied because collateral estoppel only applies when the issue has previously been litigated between the same parties. *See State v. Charlotte Hungerford Hosp.*, 60 A.3d 946, 949 (Conn. 2013) ("Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim."). First, plaintiff was prosecuted by the State of Connecticut, not by the City of Waterbury, and thus plaintiff cannot establish privity between the defendants in this action and the prosecution in the prior action.  Additionally, even if plaintiff could establish privity between the City of Waterbury and the State of Connecticut, because the defendants are sued in their individual capacity here, there is no privity between defendants and the government in plaintiff's state court criminal prosecution, and plaintiff's attempt to invoke collateral estoppel is futile. *See, e.g., Smith v. Holtz*, 210 F.3d 186, 199 n.18 (3d Cir. 2000) (finding no abuse of discretion in the district court's decision to deny plaintiff's request for offensive collateral estoppel and noting that law enforcement defendants sued in their individual capacities are not in privity with the government in a prior criminal prosecution (citing 18 Charles A. Wright, Arthur R.

Miller, Edward H. Cooper, Federal Practice and Procedure § 4458, at 508 (1981)));
*Lewis v. City of New York*, No. 10cv3266, 2011 U.S. Dist. LEXIS 83289, at *10 n.6
(E.D.N.Y. July 29, 2011) (noting that "the weight of authority holds that public
employees sued in their individual capacities are not in privity with their
employers, or with each other, for res judicata purposes" (citing 18 Charles A.
Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure §
4458, at 567 (2d ed.2002))); *Poindexter v. Carroll*, No. 1:11cv667, 2013 U.S. Dist.
LEXIS 73034, at *25-26 (M.D. Pa. May 23, 2013) ("A plaintiff in a federal civil rights
action may not use collateral estoppel offensively against a defendant law
enforcement officer because a defendant in a § 1983 action, sued in his individual
capacity, is not considered to be in privity with the government in a prior criminal
prosecution." (citing *Smith v. Holtz*, 210 F.3d at 199 n.18; *Padilla v. Miller*, 143 F.
Supp. 2d 453, 465-66 (M.D. Pa. 1999))).

### 4. Qualified Immunity

Defendants are eligible for qualified immunity if "(1) [their] conduct does
not violate a clearly established constitutional right, or (2) it was 'objectively
reasonable' for the officer[s] to believe [their] conduct did not violate a clearly
established constitutional right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008)
(citing *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)).  The Fourth Amendment
right to be free from excessive force during arrest is clearly established, and thus
the only questions in this case are (1) whether defendants violated that right, and
(2) if so, whether it was objectively reasonable for defendants to believe that their
use of force during plaintiff's arrest did not violate plaintiff's right to be free from

excessive force.  *See, e.g., Serrano v. Buckner*, No. 3:12cv4, 2014 U.S. Dist. LEXIS

134281, at *29 (D. Conn. Sept. 24, 2014) (noting that the Fourth Amendment right

against excessive force is clearly established and thus "[defendant] would be

entitled to qualified immunity only if it was objectively reasonable for him to

believe that his conduct did not violate the Fourth Amendment."). The

defendants' belief is objectively reasonable if "'officers of reasonable

competence could disagree' on the legality of the action at issue in its particular

factual context."  *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013).

Defendants bear the burden of proving the affirmative defense of qualified

immunity.  *See Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013).  A ruling on

defendants' qualified immunity claim is premature because the question of

whether Cavanaugh and Liquindoli violated plaintiff's Fourth Amendment right

must be decided by the jury.  Nor have Cavanaugh and Liquindoli shown that no

reasonable jury could conclude that it was objectively reasonable for them to

believe that their use of force during plaintiff's arrest did not violate plaintiff's

Fourth Amendment right.  Defendants' motion for summary judgment on

plaintiff's excessive force claim is denied.

<u>CONCLUSION</u>

  For the above described reasons, defendants' partial motion for summary

judgment is granted as to plaintiff's deliberate indifference claim against all three

defendants, and denied as to plaintiff's excessive force claim against defendants

Cavanaugh and Liquindoli.

IT IS SO ORDERED.

_____/s/_____
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: February 10, 2015.**