UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| KACEY LEWIS, | : | |
| --- | --- | --- |
| | : | |
| Plaintiff, | : | No. 3:10-CV-112 (VLB) |
| | : | |
| v. | : | |
| | : | January 28, 2019 |
| THOMAS CAVANAUGH, JAMES DICKEY, and ROBERT LIQUINDOLI, | : : : | |
| | : | |
| Defendants. | : | |

## ORDER FURTHER ARTICULATING DISMISSAL OF THE CASE

On January 17, 2019, during the first day of evidence at trial, this Court dismissed Plaintiff Kacey Lewis's case. The reasoning for the dismissal is evident from the recording of the proceedings. This order further articulates the reasons for the dismissal.

### I. Factual Background

On June 4, 2018, the Court scheduled jury selection of this case for January 15, 2019, with evidence to proceed on January 17, 2019. *See* [Dkt. Nos. 277, 292, 293, 296, 297, 298, 309, 311, 313, 341, 321, 322, 323]. Despite having the benefit of the court's pretrial order containing detailed instructions on how to prepare and more than six months to prepare, Plaintiff appeared at jury selection without having complied with the Court's pretrial order regarding submission of exhibits.

Plaintiff's disruptive behavior persisted during jury selection when he refused to exercise peremptory challenges, claiming the defense attorneys were

1

distracting him by listening to a recording of an exhibit Mr. Lewis proposed for the first time that day to introduce as a trial exhibit. Counsel were standing as far away from Mr. Lewis as possible, in the extreme corner of the courtroom gallery on the opposite side of the courtroom from where Mr. Lewis was sitting at plaintiff's counsel table.

Following jury selection, the Court addressed evidentiary matters. Plaintiff was agitated, oppositional, and disruptive to the extent he had to be restrained in hand cuffs and leg irons for the safety of others.

Two days later, on the morning evidence was scheduled to begin, Correctional Officers informed the Courtroom Deputy that Plaintiff arrived at the courthouse in an agitated state. The Court ordered Plaintiff to remain in the restraints the Officers had applied. Plaintiff objected and, although Plaintiff was boisterous, the Court ordered the handcuffs removed to facilitate the presentation of evidence. During the Court's consideration of evidentiary matters before the jury entered the courtroom Plaintiff remained agitated, oppositional and disruptive.

After the jury entered the courtroom, Plaintiff made his opening statement uneventfully but became agitated and was belligerent with the Court during his direct examination of himself and glared menacingly at the parties sitting at the defense table.

On cross examination Plaintiff was asked about the damages he was claiming and he acknowledged he was seeking damages for emotional distress. When defense counsel asked if he had filed other lawsuits claiming emotional distress Plaintiff refused to answer the question. When reminded that he had to

state the basis of his objection, he cited an irrelevant rule of evidence and then challenged the relevance of the testimony elicited. The Court explained the relevance and overruled the objection. Plaintiff then refused to answer citing "conscientious objection." The Court instructed him to state the religious or other belief which would be violated if he answered the question and he refused. Instead he argued with the Court ultimately admitting he refused to answer because disagreed with the Court's ruling and believed whether he claimed others caused him emotional distress was not relevant. Plaintiff persisted in his refusal to answer and the Defendants moved for dismissal. The Court provided Plaintiff another opportunity to change his mind and answer the question as the Court had ordered, but Plaintiff declined. The Court declared a recess and excused the jury.

Outside the presence of the jury, the Court asked Plaintiff if he would answer the question posed and other questions posed by the defense which the Court ruled were proper against Plaintiff's objection. He said he would not do either. The Court explained it was the role of the Court to determine what the jury heard and that a witness had to answer questions the Court ruled were proper. Finally, the Court explained that it would have to dismiss the case if Plaintiff refused to answer questions the Court ruled were proper. The Court reminded Mr. Lewis that the Court had dismissed another case he filed for failure to proceed with trial and would have to dismiss this one if he persisted in refusing to answer questions the Court ruled were proper. The Court reminded Mr. Lewis that the Court reopened the prior case when Mr. Lewis convinced the Court that his earlier refusal to proceed with trial was due to his agitation and inability to think clearly and control

his behavior. The Court then explained it was declaring a recess to disengage and afford Plaintiff time to compose himself and reconsider his position. Before recessing, the Court reminded Mr. Lewis his case would be dismissed if he continued to refuse to honor the Court's rulings and answer questions the Court ruled proper.

When the proceeding resumed approximately 10 minutes later, Plaintiff stated he would not respect the Court's rulings and answer the questions properly posed. The Court dismissed the case. This decision further articulates the Court's reasons for dismissing the case.

II. <u>Legal Standard</u>

A court may dismiss a case upon motion of a party to an action for the unjustified failure of a Plaintiff to prosecute. "The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts. The power is of ancient origin, having its roots in judgments of nonsuit and non prosequitur entered at common law." *Link v. Wabash R. Co.*, 370 U.S. 626, 629-30 (1962) (affirming dismissal for failure to prosecute where plaintiff's counsel failed to appear at a duly scheduled pre-trial conference and gave no reasonable explanation for his absence, finding it could "reasonably be inferred from [counsel's] absence, as well as from the drawn-out history of the litigation that petitioner had been deliberately proceeding in dilatory fashion."). The Supreme Court noted that the authority to dismiss for

failure to prosecute was expressly recognized in Federal Rule of Civil Procedure 41(b), which states:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).

A Court should endeavor to avoid dismissal when reasonably possible. "Dismissal is a harsh remedy and is appropriate only in extreme situations." *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996). A court should take steps to avoid dismissal and assure that the plaintiff is fully informed that his or her conduct will lead to dismissal before dismissing a case. A case should not be dismissed unless "particular procedural prerequisites" are accorded to the Plaintiff, including "notice of the sanctionable conduct, the standard by which it will be assessed, and an opportunity to be heard." *Mitchell v. Lyons Prof'l Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013) (collecting cases).

III. Discussion

Courts conduct two analyses to determine whether dismissal for failure to prosecute is appropriate. *See Lewis v. Rawson*, 564 F.3d 569 (2d Cir. 2009); *U.S. ex rel. Drake v. Norden Systems, Inc.*, 375 F.3d 248 (2d Cir. 2004). The first and most applicable here applies when a plaintiff refuses to go forward with a properly scheduled trial. *See Lewis*, 564 F.3d at 576-77, 582 (citing the *Drake* factors but acknowledging that facts outside those ordinarily addressed by those factors—failing to comply with filing deadlines, discovery orders, court dates, and general

5

dilatory conduct—including the refusal to testify at trial, required special consideration and later concluding that the *Drake* factors would not require a different result).

In *Lewis v. Rawson*, the Second Circuit recognized that "[i]t is beyond dispute under our precedent that a district court may dismiss a case under Rule 41(b) when the plaintiff refuses to go forward with a properly scheduled trial." 564 F.3d at 580 (internal quotations omitted) (citing *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990)). Further, the Second Circuit stated that, "where a district court is confronted with a 'plaintiff's unwillingness to proceed on the date scheduled for trial, as opposed to the more typical failure to comply with her discovery obligations on time, or to meet some other pre-trial deadline,' it is 'not unreasonable' to consider treating such unwillingness 'more severely.'" *Id.* (citing *Moffitt v. Ill. State Bd. of Educ.*, 236 F.3d868, 873 (7th Cir. 2001)). With this in mind, the Court reviews the specific facts and circumstances that led the Court to reach the conclusion that it must dismiss Plaintiff's case as a result of his refusal to testify.

a. <u>Appropriateness of Dismissal & Insufficiency of Other Means</u>

First, this Court recognized that other options for handling Plaintiff's continued refusal to testify were simply insufficient. A witness must answer questions eliciting relevant evidence. *Barnett v. Norman*, 782 F.3d 417, 422 (9th Cir. 2015) ("Witnesses cannot refuse to answer questions merely because they choose not to."); *see also United States v. Wilson*, 421 U.S. 309, 316, 319 (1975). If a witness refuses to answer, a judge must encourage a witness's testimony by, for

instance, directing the witness to answer the question and telling him about the consequences of not doing so, asking the questions herself, or taking a recess and inquiring outside the presence of the jury whether something is impeding truthful testimony. *Barnett*, 782 F.3d at 422 (compiling cases). It is particularly critical that a plaintiff answer properly posed questions because the court can strike direct testimony of a witness who refuses to answer related questions on cross-examination. 1 McCormick On Evid. § 19 (7th ed.) ("[An] adversary is entitled to have the direct testimony stricken" when "a party testifying on his own behalf . . . unjustifiably refuse[s] to answer questions necessary to a complete cross-examination."). Where a witness refuses to cooperate, a court also has the authority to hold that witness in contempt. *See* 18 U.S.C. §§ 401, 402; 28 U.S.C. §§ 636(e), 1826; *United States v. Wilson*, 421 U.S. 309, 316, 319 (1975) ("In an ongoing trial, with the judge, jurors, counsel, and witnesses all waiting," a witness's "contumacious silence, after . . . an explicit, unambiguous order to testify, impede[s] the due course of trial" and can warrant summary contempt sanctions).

Other means are insufficient and dismissal proper where a plaintiff refuses to proceed in accordance with the court's procedural rulings. *Lewis*, 564 F.3d at 581); *Eddy v. Webber, County*, 77 F. 3d 492 (10th Cir. 1996) (upholding dismissal where the plaintiff refused to proceed after the court granted motion to sequester all witnesses other than the defendant's representative); *Palmieri v. Defaria,* 88 F.3d 136 (2d Cir. 1996) (upholding dismissal where the plaintiff elected to appeal rather than await a final judgment). Indeed, as the Second Circuit in *Lewis* expressed, "where a plaintiff refuses to proceed with trial following a district court's

7

unfavorable ruling on a request for continuance or *in limine* motion, . . . a district court has no real choice but to dismiss the case." *Lewis*, 564 F.3d at 581 (quotations and citations omitted).

Here, Plaintiff declined to follow this Court's order by refusing to answer a proper question on cross-examination at trial and asserted no legitimate privilege underlying his refusal. In addition to his refusal to answer a question relevant to Defendant's proportional liability for his emotional distress, he also refused to answer any question if he disagreed with a court ruling that it was permissible.

Plaintiff's position was untenable for three reasons. First, it undermined, if not usurped, the role of the Court. *See Wilson*, 421 U.S. at 315-16 ("The refusals [to answer questions while on the stand] were contemptuous of judicial authority because they were intentional obstructions of court proceedings that literally disrupted the progress of the trial and hence the orderly administration of justice."). Second, it is unworkable. The Court would have to strike evidence offered and claims made by Plaintiff based on Plaintiff's later refusal to answer questions. Keeping track of the evidence and what could be stricken would have been untenable. This would confuse the jury and the trial itself could end up being futile because there may have been insufficient evidence to give the case to the jury to decide. And third, conducting the trial in such a manner would be highly prejudicial to the Defendants. In light of these considerations, dismissal was the only option.

### b. Ability to Go Forward and Appeal

Plaintiff had, and knew he had, the ability to appeal any evidentiary rulings with which he disagreed. *See Eddy*, 77 F.3d at *1 ("Plaintiff could have proceeded at trial and then raised his challenge to the district court's . . . ruling on appeal from any adverse judgment. Instead, plaintiff simply refused to go forward, despite the court's warning that his refusal would result in the dismissal of his case."). There is no justification for Plaintiff's refusal to agree to answer questions which the Court ruled were proper despite having been repeatedly warned that his persistent refusal would result in dismissal. *See Lewis*, 564 F.3d at 580-81. Plaintiff is a serial filer and is well aware if his right to appeal and had done so successfully, including in this case. *See Lewis v. Cavanugh*, 685 F. App'x 12 (2d Cir. 2017); [Dkt. 270 (2d Cir. Mandate)]. His knowledge of his appeal option and his refusal to proceed with trial anyway illustrate Plaintiff's obstructionist intent in refusing to answer questions on cross-examination that he simply did not wish to answer because his answers had the potential to undermine his claim.

### c. Plaintiff's Understanding of the Consequences & Combative Conduct

"[*P*]*ro se* plaintiffs should be granted special leniency regarding procedural matters," and their claims should be dismissed for failure to prosecute "only when the circumstances are sufficiently extreme." *LeSane v. Hall's Sec. Analyst*, Inc., 239 F.3d 206, 209 (2d Cir. 2001) (internal quotation marks omitted). Courts should be especially hesitant to dismiss *pro se* claims for procedural deficiencies. *Lucas*, 84 F.3d at 535. But the rationale for the special solicitude afforded a *pro se* litigant is that he "generally lacks both legal training and experience and, accordingly, is

9

likely to forfeit important rights through inadvertence if he is not afforded some degree of protection." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006)). It is not meant to excuse continued aggressive and combative conduct in direct contravention of court orders. Even a *pro se* litigant must be heal to some minimal standard of diligence and comportment. The principle of solicitude was honored and exhausted here.

The Court clearly and patiently explained its ruling and repeatedly warned that the Court would have no recourse but to dismiss the case if Plaintiff refused to answer questions the Court ruled proper. The Court recognized and accounted liberally for Plaintiff's circumstances and knowledge and made continued deliberate efforts to ensure that Plaintiff understood what was required of him and the potential consequences of his failing to meet those requirements. *See Tracy*, 623 F.3d at 101-02. It should be noted that Mr. Lewis is an experienced litigator who no doubt understood the Court's warning because his other cases have been dismissed for failure to prosecute, including his appeal of the third dismissal of *Lewis v. Frayne*. *See* Case No. 12-cv-01070-VLB, [Dkt. 379 (MANDATE of USCA dated 1/2/2019 Dismissing Dkt. 369 Notice of Appeal filed by Kacey Lewis in which the court stated, "The court understands the difficulties pro se litigants find in pursuing appeals. It will therefore grant an extension beyond that requested (the court also does not issue briefing schedules with Thanksgiving as the scheduled date). Appellant must understand that this appeal cannot remain pending indefinitely. Therefore, an extension until December 14, 2018 is granted. The

appeal is dismissed effective December 14, 2018 unless a brief is filed by that date. A motion for reconsideration or other relief will not stay the effectiveness of this order. *See RLI Ins. Co. v. JDJ Marine, Inc.*, 716 F.3d 41, 43-45 (2d Cir. 2013).")]. In addition to the usual solicitude, the Court recognizing Plaintiff's tendency to act irrationally when under pressure, excused the jury to explain the law to Plaintiff and when that was futile declared a recess to allow Plaintiff to regain his composure and reconsider his position and its consequences. That proved futile as well. Thus, the Court discharged its heightened duty to this *pro se* litigant. *See LeSane*, 239 F.3d 206.

Plaintiff's history of vexatious litigation is manifest in the history of *Lewis v. Frayne*, cited above, in which the appeal of the third dismissal was recently dismissed. *See supra*. It is also worth noting that Plaintiff has filed four additional civil lawsuits—for a total of 6—since he has been in prison. *See* Case Nos. 16-cv-589, 17-cv-1764, 17-cv-2070, 18-cv-1725.

All of this Court's proceedings are recorded on audio files maintained by the Clerk of the Court and available for the asking. The audio files of the proceedings in this case and other cases filed by Plaintiff soundly demonstrate the extreme patience and deference this Court has exercised. They also document the disrespectful and abusive conduct of Plaintiff towards opposing counsel and the Court. Plaintiff's refusal to honor this Court's rulings is just the last of a persistent series of vexatious acts perpetrated by Plaintiff against his opponents and the Court. Should this matter be appealed, the appellate court is strongly urged to take

the time to listen to the actual recordings to get a true appreciation of what has been transpiring in the courtroom.

### d. The *Drake* Factors

Dismissal of this case is also warranted by application of the factors set forth in *Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004). The plaintiff's failure to prosecute caused not just a delay but an absolute inability to proceed. As noted above, plaintiff was given clear and repeated notice his case would be dismissed if he refused to honor the Court's decisions and an opportunity to disengage and reconsider his position. He refused to cooperate.

The matters at issue occurred nearly a decade ago. Memories fade, and witnesses become unavailable. Indeed, none of the non-party witnesses could be located to testify at trial. While these non-party witnesses testified against Plaintiff at his criminal prosecution based on the same incident at issue here and their testimony read into the record in the earlier trial of this case corroborated the exigency Defendants stated they confronted at the time of Plaintiff's arrest, Defendants were prejudiced because the focus of their criminal trial testimony is different than the focus of the testimony Defendants need to elicit to defend against the excessive force claim made here. Defendants would be further prejudiced by even further delay.

Congestion of the Court's calendar was not at issue although the Court had three cases scheduled for jury selection in mid-February.

At issue was Defendants' increasing inability to defend themselves and have their day in court. In fact, Plaintiff's behavior suggests he had no intention of giving

**Defendants their day in court and instead was abusing the judicial process in retaliation for his arrest by Defendants and the City of Waterbury and the twenty-five-year sentence he received.**

**IV. Conclusion**

Based on Plaintiff's persistent abusive, obstructive, and disruptive conduct culminating in his refusal to answer a question as directed by the Court and refusal to agree to answer questions which the Court ruled are permissible under the Rules of Evidence, the Court finds Plaintiff has forfeited his right to proceed with trial. Further efforts to proceed with trial would be futile as Plaintiff's testimony is critical and therefore Plaintiff has left no recourse for the Court other than to dismiss the case. Accordingly, the case is DISMISSED.

**IT IS SO ORDERED.**

                                                      **/s/**
                              **Hon. Vanessa L. Bryant**
                              **United States District Judge**

**Dated at Hartford, Connecticut: this 28 day of January 2019.**